IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEWART RODRIGUEZ DUDAMEL,** | : | CIVIL ACTION |
| *Petitioner*, | : | NO. 26-361 |
| | : | |
| v. | : | |
| | : | |
| **JL JAMISON,** *in his official capacity as warden of the Philadelphia Federal Detention Center, et al.*, | : | |
| *Respondents*. | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 FEBRUARY 23, 2026

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Petitioner Stewart Rodriguez Dudamel's, ("Mr. Rodriguez" or "Petitioner")[1], *petition for a writ of habeas corpus* filed pursuant to 28 U.S.C. § 2241, (the "Petition"), (ECF 1), which challenges his detention by the Department of Homeland Security, ("DHS"). In the Petition, Mr. Rodriguez, a native of Venezuela, contends that he is being illegally detained pursuant to Section 241 of the Immigration and Nationality Act, ("INA"), codified as 8 U.S.C. § 1231(a)(6), ("Section 1231(a)(6)"), because he was deprived of proper notice and process. In their response, Respondents,[2] (hereinafter, the "Government"), argue that the Petition should be

---

[1]      Venezuelan tradition proscribes that an individual is formally addressed by their first name and first surname. *See* Nina Evason, *Venezuelan Culture—Naming*, Cultural Atlas (2019), https://culturalatlas.sbs.com.au/venezuelan-culture/venezuelan-culture-naming. Accordingly, the Court heeds that custom.

[2]      Petitioner has named the following parties as Respondents: JL Jamison, in his official capacity as the warden of the Philadelphia Federal Detention Center; Brian McShane, is the Acting Field Office Director for Immigration and Customs Enforcement's, (hereinafter, "ICE"), Enforcement and Removal Operations; Todd Lyons, in his Official Capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the DHS; Pamela Bondi, Attorney General of the United States, (hereinafter, "Attorney General"); and DHS.

1

dismissed on the merits as Petitioner is being lawfully detained pursuant to Section 1231(a)(6) because there is a significant likelihood of removal in the reasonably foreseeable future, and his continued detention is constitutional as it serves important governmental interests and has not yet surpassed the presumptively unreasonable length. The issues have been fully briefed and are ripe for disposition. For the reasons set forth herein, Mr. Rodriguez' *habeas corpus* Petition is granted.

**FACTUAL BACKGROUND**

On January 20, 2026, Mr. Rodriguez filed the underlying counseled *habeas* Petition seeking, *inter alia,* release from detention. (ECF 1). To address the issues before this Court, a brief summary of facts, which has been gleaned from the documents submitted with the Petition and the Government's response, is helpful:

> Mr. Rodriguez, a Venezuelan citizen, was previously removed from the United States by "expedited removal on April 26, 2018." (ECF 1, Ex. D at p. 61; *see also* ECF 7 at p. 2). On December 26, 2023, Mr. Rodriguez was apprehended while attempting to re-enter the United States with his wife and a minor son at Eagle Pass, Texas, without inspection. (ECF 1, Ex. D at pp. 56-57). Pursuant to Section 1231(a)(5), on December 31, 2023, Mr. Rodriguez' previous Final Order of Removal was reinstated. (ECF 1, Ex. B at p. 22). While detained at the Port Isabel Detention Center in Texas, Mr. Rodriguez was provided on January 31, 2024 with a Reasonable Fear Interview. (ECF 1, Ex. C at pp. 30-51). There, an Asylum Officer found that Mr. Rodriguez credibly established a reasonable possibility of future torture based on his experiences of harm by members of a pro-government group in Venezuela. (*Id.* at pp. 32-33). Because Mr. Rodriguez' persecutor was the local government of Venezuela it was "presumed unreasonable" that he could avoid a future threat to his life or freedom by relocating to another part of Venezuela. (*Id.* at p. 49).
>
> Pursuant to that determination, Petitioner was placed into Withholding Only proceedings and detained in Oakdale, Louisiana. (ECF 1 at ¶ 16). A hearing before an immigration judge was scheduled for January 14, 2026, for a reasonable fear of persecution or torture determination in accordance with 8 C.F.R. § 208.31(e) at the Immigration Court in Philadelphia, Pennsylvania. (*Id.* at ¶¶ 15-16; ECF 1, Ex. C at p. 28). On February 29, 2024, while still detained, Mr. Rodriguez submitted a Form I-589 Application for Asylum and for Withholding of Removal. (ECF 1, Ex. D at pp. 54-69). On March 11, 2024, Petitioner received a Notice of Internet-Based Hearing before the Immigration Court in Oakdale, Louisiana to occur on June 18, 2024. (*Id.* at pp. 53-54).

Consistent with a Notice of Release dated April 26, 2024, a New Orleans Deputy Field Office Director concluded that, "[b]ecause the agency ha[d] not effected [Mr. Rodriguez'] deportation or removal during the period prescribed by law," Mr. Rodriguez would be released from ICE custody pending his removal from the United States. (ECF 1, Ex. B at pp. 21-25). It was accompanied by an Order of Supervision, ("OSUP"), also dated April 26, 2024, which prescribed the conditions of his release. (*Id.* at pp. 22-25). One such condition was regular reporting requirements, specifically requiring Petitioner to report to an ICE agency office in Philadelphia, Pennsylvania on May 22, 2024—which Mr. Rodriguez did. (*Id.* at pp. 22-23, 25). Mr. Rodriguez avers, and the Government does not contest, that the OSUP was issued based upon ICE's determination that he was neither a threat to the community, nor a flight risk. (ECF 1 at ¶ 42).

Since his release, Mr. Rodriguez has lived continuously in the United States, (ECF 1 at ¶¶ 3, 13), specifically, in Honey Brook, Pennsylvania. (*Id.* at ¶ 6). Mr. Rodriguez' mother and four siblings also live in the area. (ECF 1, Ex. D at p. 59). Mr. Rodriguez has received various notices of internet-based hearings, (*see, e.g.* ECF 1 at pg. 53), and has complied with them all. Most recently, on November 23, 2025, Mr. Rodriguez was notified that a Master Hearing would occur before the Philadelphia Immigration Court on August 18, 2026. (ECF 1, Ex. E at p. 71).

Mr. Rodriguez avers that, upon reporting for a scheduled January 14, 2026 immigration hearing, ICE arrested him.[3] (ECF 1 at ¶ 1). He was detained at the Philadelphia Federal Detention Center, ("FDC"). (ECF 1, Ex. A at p. 19). Mr. Rodriguez avers that ICE did not, at any time, explain why his OSUP was revoked or provide him with an opportunity to respond to his arrest and revocation. (ECF 1 at ¶ 22).

Attached to the Government's response to the Petition is a Notice of Revocation of Release, (the "Notice"), signed by an Acting Field Office Director on January 14, 2026. (Notice, ECF 7-1). The Notice indicates, *inter alia*, that:

> [Mr. Rodriguez'] case was reviewed and it has been determined that [he] will be kept in custody of [ICE] at this time. This decision was made based on a review of [his] file and account of changed circumstances in [his] case. ICE has determined that there is a

---

[3] While Mr. Rodriguez avers that his OSUP was revoked and he was detained on the date of his scheduled appearance at the ICE office in Philadelphia (January 14, 2026), the Government contends that the revocation and detention occurred on January 20, 2026. (*Compare* ECF 1 at ¶¶ 1, 3 *with* ECF 7 at p. 2). Mr. Rodriguez bolsters his position with a notice of his January 14, 2026 hearing dated December 2, 2024, (*see* ECF 1, Ex. C at p. 28), and a screenshot of the ICE Detainee Locator system reflecting his detention at the FDC as of January 20, 2026, (*see* ECF 1, Ex. A at p. 19). The Government provides a Notice of Revocation dated January 14, 2026. (ECF 7-1). This *habeas* Petition was filed January 20, 2026. Based on the facts presented, the Court assumes without finding that Mr. Rodriguez' OSUP was revoked and he was detained on January 14, 2026.

3

significant likelihood of removal in the reasonably foreseeable future in [Mr. Rodriguez'] case.

(*Id.*).  The Government is silent on when or if the Notice was provided to Mr. Rodriguez, or whether he has been provided the informal interview therein noted.

By Order dated January 23, 2026, this Court instructed that, *inter alia*, the Government was not to move or remove Mr. Rodriguez outside of the City of Philadelphia or the FDC during the pendency of this matter.[4]  (ECF 3).  He remains detained today but not in Philadelphia, as ordered.

**LEGAL STANDARD**

A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution and/or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(1), (3).  The burden is on a petitioner to show that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).  Further, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in deportation proceedings.  *See Serrano-Alberto v. AG United States*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including [noncitizens] in immigration proceedings who are entitled to due process of law.  Thus, this case is properly before this Court.

---

[4] Mr. Rodriguez brought to the Court's attention the ICE detainee locator search results in his Petition, reflecting his detainment in the Philadelphia Federal Detention Center as of January 20, 2026. (*See* ECF 1, Ex. A).  As of the date of this Opinion, the same publicly available Government database shows that Mr. Rodriguez is today detained at the Moshannon Valley Ice Processing Center in Clearfield County, Pennsylvania, apparently, contrary to this Court's January 23, 2026 Order.  Accordingly, the Court takes judicial notice of that fact.  *See Vanderklok v. United States*, 868 F.3d 189, 205 n. 16 (3d Cir. 2017) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of ... information ... made publicly available by government entities[.]").

**DISCUSSION**

Undisputedly, Petitioner is being detained pursuant to Section 1231(a). The issue presented here is whether Petitioner's due process rights were violated when he was detained.

In its response, the Government argues that Petitioner cannot meet his burden of showing his detention is unlawful because the Government has complied with the provisions of Section 1231(a)(6). The Government further argues that Petitioner is not entitled to *habeas* relief because no due process violation has occurred. Rather, the Government contends that detention pending a decision on a noncitizen's removal is a constitutionally valid aspect of the removal process which serves important governmental interests, and that Petitioner—absent a showing that his detention is "indefinite"—is not entitled to any *habeas* relief until the expiration of the presumptively reasonable six-month period of Section 1231(a)(6) detention. Finally, the Government argues its revocation of Petitioner's OSUP was proper pursuant to 8 C.F.R. § 421.1(l)(2) and, thus, there was no violation of the Administrative Procedures Act, "(APA"), nor was the action *ultra vires*.[5] Despite these points of argument, the Government appears to overlook or miss the issue here.

### *Section 1236(a)(6) and Implementing Regulations*

Neither party disputes that Petitioner is being detained under Section 1231(a), which sets out the procedures for detaining a noncitizen who is subject to a final order of removal. *See* 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (finding that Section 1231(a) "authorizes the detention of noncitizens who have been ordered removed from the United States"). Specifically, Section 1231(a) provides that, subject to exceptions, "when a[] [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States

---

[5] Because this Court finds Petitioner is entitled to *habeas* relief on the grounds that his detention is unlawful and unconstitutional, it declines to reach Petitioner's APA and *ultra vires* arguments.

within a period of 90 days." 8 U.S.C. § 1231(a). That 90-day period is referred to as the "removal period." *Id.*

Pursuant to Section 1231(a)(2)–(3), such individuals shall be detained during the removal period or, if their removal cannot be timely executed during that time, released subject to supervision. 8 U.S.C. § 1231(a)(2)–(3). Certain inadmissible noncitizens, including those who have been determined by the Attorney General to be either a risk to the community or unlikely to comply with the order of removal, may be detained *beyond* the removal period (or, released subject to supervision). *Id.* at § 1231(a)(6); *see also Johnson*, 596 U.S. at 575 ("In particular, [Section] 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision."). These procedures apply to circumstances, as here, where a removed individual "re-enter[s] without authorization and appl[ies] for withholding of removal based on a fear that they will be persecuted or tortured if returned to their countries of origin." *Johnson*, 596 U.S. at 576.

Thus, when a noncitizen ordered removed is released from detention, the release is subject to an OSUP "under regulations prescribed by the Attorney General[,]" which are codified at 8 C.F.R. § 241.5(a). 8 U.S.C. § 1231(a)(3); *see also Funes v. Francis*, No. 25 CIV. 7429 (PAE), 2025 WL 3263896, at *13 (S.D.N.Y. Nov. 24, 2025) (noting that 8 C.F.R. § 241.5(a) contains those regulations which implement the terms of supervised release). The OSUP sets out the noncitizen's specific conditions of supervision, including, *inter alia*, reporting requirements, travel limitations, and compliance with efforts to obtain a travel document. 8 C.F.R. § 241.5(a)(1)–(5).

8 C.F.R. § 241.4(l) proscribes the process ICE must follow in revoking a noncitizen's OSUP. Paragraph (l), entitled "Revocation of release," provides, *inter alia*, that any noncitizen whose OSUP is revoked "will be notified of the reasons for revocation of his or her release or

parole" and "will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* at § 241.4(l)(1).[6] Moreover, Paragraph (l)(2) specifies those individuals with authority to revoke a noncitizen's OSUP, and the extent of that authority. In full, it reads:

> Determination by [DHS]. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [DHS] custody a[] [noncitizen] previously approved for release under the procedures in this section. A district director may also revoke release of a[] [noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
>> (i) The purposes of release have been served;
>>
>> (ii) The [noncitizen] violates any condition of release;
>>
>> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against a[] [noncitizen]; or
>>
>> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).

---

[6] These procedural protections first appear in subparagraph (l)(1), entitled "Violations of conditions of release," *see* 8 C.F.R. § 241.4(l)(1), and are subsequently referenced in subparagraph (l)(3), which sets forth the various review procedures available to all noncitizens whose OSUP is revoked, *see id.* at § 241.4(l)(3). While neither party appears to dispute that the procedural protections set forth in subparagraph (l)(1) apply to all revocations, regardless of the grounds for revocation, the Court is mindful that the matter has been disputed by the Government in other recent instances. This would appear to be a matter of first impression for the United States Court of Appeals for the Third Circuit, ("Third Circuit"). However, this Court is guided by the Supreme Court's *dicta* regarding that section of the regulation, which supports that its procedural protections apply to all revocations: "[I]n order to revoke conditional release, the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for the revocation stated in the notification.'" *Noem v. Abrego Garcia*, ––– U.S. ––––, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J., joined by Kagan, J., and Jackson, J.) (quoting 8 C.F.R. § 241.4(l)). Moreover, the majority of district courts in the United States Court of Appeals for the Second Circuit presented with the issue have held that "the text of § 241.4(l) sets forth a unified set of procedures governing the revocation of release." *Funes*, 2025 WL 3263896, at *16 (collecting cases). Such an interpretation would seem assented to by the Government here based on the plain text of their Notice of Revocation of Release dated January 14, 2026. Accordingly, this Court holds that the procedural protections of subparagraph (l)(1) apply to an OSUP revocation based on DHS' determination pursuant to 8 C.F.R. § 241.1(l)(2), as here.

In this case, Petitioner's detention falls within the post-removal period, as he was already detained pursuant to Section 1231(a) during his "removal period"—*i.e.* the 90 days that followed his reinstated final order of removal, dated December 31, 2023.  In fact, Petitioner was detained for a period of 120 days beginning December 26, 2023 through April 24, 2024, when he was released on an OSUP.  As noted, the Government argues that Petitioner may be legally detained pursuant to Section 1231(a)(6) pending a decision on his removal.  While that is generally correct statement, the application to this case is flawed for two reasons.

Detailed above, Section 1236(a)(6) qualifies the circumstances in which a noncitizen ordered removed may be detained beyond the removal period.  8 U.S.C. § 1236(a)(6).  The only circumstance potentially applicable here would be upon a determination "by the Attorney General [that the noncitizen is] a risk to the community or unlikely to comply with the order of removal."  8 U.S.C. § 1236(a)(6).  However, the Government has not argued that the Attorney General made any such determination with respect to Petitioner, nor does the record support such a conclusion.  Over the past two and half years, Petitioner has dutifully reported to ICE and complied with the terms of his OSUP.  He has resided at the same Pennsylvania address, near to his family members.  His removal has been pending awaiting an asylum officer's determination that he had a credible fear of returning to his native country, and Petitioner voluntarily appeared for an immigration judge's scheduled review of that decision on the day he was detained.  Until the day of his arrest, there has not been any behavior or facts to sustain any concern for risk to the community or noncompliance with his Order of Removal.

Moreover, the Government appears to have glossed over the procedural requirements of 8 C.F.R. 241.14(l) that Petitioner be notified of the reasons for the revocation of his OSUP

8

and, promptly after his re-detention, be afforded an opportunity to respond to the same.[7] The Government now puts before this Court a Notice of Revocation of Release dated January 14, 2026, (hereinafter, "Notice"), which provides, *inter alia*, that the decision was made based on Petitioner's changed circumstances and ICE's determination that there is a significant likelihood of removal in his reasonably foreseeable future. It is unclear whether this Notice, that apparently provides vague reasons for revoking his OSUP, was provided to Petitioner prior to his re-detention, or at all.

What is more problematic, however, is that, as of the date of the Government's timely response to the Petition—submitted sixteen days after Petitioner's re-detention—no party avers that Petitioner has had any opportunity to respond to the Government's reasons justifying the revocation of his OSUP. Indeed, the Notice provides that he would be administered an interview, but it appears none has occurred. Thus, the Government has failed to provide Petitioner with, as required, "an initial informal interview ***promptly*** after his or her return to [ICE] custody…" 8 C.F.R. § 241.4(l)(1).

For the reasons set forth in the preceding paragraphs, it would appear that Petitioner would have a meaningful rebuttal to the Government's proffered reasoning for revocation. Such lack of the proper notice and process violates the INA, its corresponding regulations, and, as discussed below, the Fifth Amendment Due Process Clause of the United States Constitution.

---

[7] Petitioner also argues that his OSUP was revoked by an individual who lacked authority to do so. The Notice of Revocation was signed by Acting Field Office Director Michael Rose. (*See* Notice, ECF 7-1). The Government presents no argument on Mr. Rose's authority to revoke Petitioner's OSUP. The Court notes that subparagraph (l)(2) of § 241.4 contemplates only the Executive Associate Commissioner of ICE and a district director as possessing revocation authority, and that their discretion is conditioned upon certain factual findings. 8 C.F.R. § 241.4(l)(2); *see also supra* at p. 7. Though it appears questionable whether Mr. Rose, as acting field office director, possessed OSUP revocation authority, the Court declines to reach Petitioner's argument because the record is void of facts to support either outcome.

*Due Process*

The parties dispute the constitutionality of Petitioner's re-detention on substantive and procedural due process grounds.  Petitioner argues that his re-detention bears no reasonable relationship to the justifications for immigration detention, is unjustified by any legitimate, non-punitive objective, and runs afoul of the applicable procedures.  In response, the Government argues that Petitioner is not entitled to *habeas* relief because his re-detention is aligned with important governmental interests; and he cannot overcome the presumption that a Section 1231(a)(6) detention is reasonable for a six-month period because he cannot show, as required to rebut that presumption, that his re-detention is indefinite or that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  It further reasserts the procedural conformity of the re-detention.  Each argument is addressed in turn.

*Substantive Due Process*

"To show a violation of substantive due process, a plaintiff must demonstrate that his detention served no legitimate government purpose by demonstrating 'a misuse of governmental power that shocks the conscience.'" *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 42 (E.D. Pa. 2025) (quoting *Desousa v. Garland*, No. CV 21-3961, 2022 WL 1773604, at *3 (E.D. Pa. May 31, 2022)).  "In the immigration context, 'the Court must determine whether Plaintiffs' detention is rationally connected to a legitimate government purpose and whether it is excessive in relation to that purpose.'" *Id.* (quoting *Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020)).  Importantly, the Supreme Court instructs that, "read in light of the Constitution's demands, [Section 1231(a)(6)] limits a[] [noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States.  It does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

In *Zadvydas*, the Supreme Court established six months as a presumptively reasonable period of detention pursuant to Section 1231(a)(6). *Id.* at 701. However, the Supreme Court made clear that the presumption is rebuttable where "a set of particular circumstances amounts to a detention . . . beyond[ ] a period reasonably necessary to secure removal." *Id.* at 699. To a district court tasked with determining "whether the detention in question exceeds a period reasonably necessary to secure removal[,]" the Supreme Court provides the following guidance:

> [T]he *habeas* court . . . should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the *habeas* court should consider the risk of the [noncitizen's] committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699–700.

Here, Petitioner is being detained because of an immigration official's determination that there is a reasonably foreseeable probability of his removal and some nondescript "changed circumstances." (Notice, ECF 7-1). The Government asserts that detention during immigration proceedings generally "serves two important interests: (1) ensuring that noncitizens will appear for hearings and comply with final removal orders; and (2) protecting the public from noncitizens who present a danger to the community during the removal process." (ECF 7 at p. 8) (internal citations omitted). For the reasons previously provided herein, it would strain credulity to find that Petitioner's re-detention bears any connection to either or both of those purposes.

Moreover, there are no facts to suggest that Petitioner's continued re-detention is required to assure his presence at the moment of removal. Throughout his years of compliance with his OSUP, Petitioner has demonstrated that he will appear to immigration-related proceedings and

11

apprise ICE of his place of residence. It is also questionable that Petitioner's removal is reasonably foreseeable. Because it has already been found that Petitioner has a credible fear of returning to Venezuela, established at the initial stage of review, (*see* ECF 1, Ex. C at pp. 26-51), it is plausible that the same finding would be affirmed by the immigration judge. Should an immigration judge affirms that Petitioner's fear of future torture in Venezuela is credible, Petitioner's removal may not occur or may become more complicated and require additional processes—*i.e.*, he may be granted asylum status or deported to a third-party country. *See* 8 C.F.R. §§ 208.31, 1208.31(g) (setting forth reasonable fear determination procedures for noncitizen's with reinstated orders of removal). It is manifestly troublesome to contemplate a scenario where Petitioner languishes in detention for the time it takes for the backlogged immigration system to accomplish such a feat. In fact, remaining detained throughout this period threatens infinitude. Therefore, the Court finds that Petitioner's continued detention is foreseeable as unreasonable and is not authorized by Section 1231(a)(6). As such, it amounts to a violation of Petitioner's substantive due process rights.

### *Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citation modified). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[The] Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

To determine whether Petitioner has been denied due process, this Court applies the *Mathews* balancing test and weighs the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

The first *Mathews* factor, Petitioner's private interest, weighs heavily in his favor because his implicated interest is his liberty. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects.") (internal citation omitted). The second factor, the risk of erroneous deprivation of such interest, the circumstances are highly suggestive that Petitioner's liberty interest is being erroneously deprived. As a noncitizen ordered removed, Petitioner has dutifully complied with ICE's requirements over the past two years. Thus, the second factor also weighs in Petitioner's favor.

Finally, considering the Government's interest, the Court finds that the burden on the Government to comport with its own regulations—if doing so amounts to a "burden" at all—is nowhere near so weighty as to outweigh the concomitant suppression of Petitioner's liberty. *See Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010) ("[W]hen an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation."). As such, the third factor weighs in Petitioner's favor. On balance, the *Mathews* factors lead this Court to find that the Government's failure to follow its own procedural requirements governing Petitioner's re-detention violated the Due Process Clause. *See Funes*, 2025 WL 3263896, at *23 ("ICE's failure to follow the important procedural requirements of § 241.4(l) violated the Due Process Clause.").

13

*Remedy*

Petitioner argues that the proper remedy for the Government's violations of the Due Process Clause, the INA and implementing regulations, and the APA is his release from custody. The Government does not contemplate the availability of any remedy and, thus, presents no counterargument. This Court agrees with Petitioner.

A *habeas* court is empowered to "dispose of the matter as law and justice require." 28 U.S.C. §§ 2241(a), 2243. "The law thus invests federal courts with equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring) (citing *Withrow v. Williams*, 507 U.S. 680, 716 (1993) (Scalia, J., concurring in part and dissenting in part)) (footnote omitted). "The traditional function of the writ of *habeas corpus* is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).

In this case, the Government detained Petitioner in violation of the INA, its regulations, and his due process rights. Given the lack of any factual support that Petitioner's re-detention serves an important governmental interest, the Court finds it unlikely that the same outcome would materialize had the proper procedures been followed. Therefore, Petitioner today is "in custody in violation of the Constitution." 28 U.S.C. § 2241(c)(3). Accordingly, the Court finds that law and justice requires his immediate release. *See Funes*, 2025 WL 3263896, at *25 (ordering release of *habeas* petitioner after finding breach of due process from failure to follow 8 C.F.R. § 241.4(l) and collecting cases evidencing same); *see also Cabreja Bueno v. O'Neill, et al.*, 2026 WL 413315, at *8 (E.D. Pa. 2026) (ordering release of *habeas* petitioner after finding breach of due process from violation of 8 U.S.C. § 1226).

**CONCLUSION**

For the reasons set forth, Petitioner's *petition for a writ of habeas corpus* is granted. Accordingly, the Court directs his immediate release from custody pursuant to the express terms of the Order which accompanies this Memorandum Opinion.

*NITZA I. QUIÑONES ALEJANDRO*, J.